### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:10CR107 |
| | ) | |
| vs. | ) | **FINDINGS AND** |
| | ) | **RECOMMENDATIONS** |
| ALBERTO MAGALLANES, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Alberto Magallanes' (Magallanes) Motion to Suppress. See Filing No. 25. Magallanes is charged in the two-count Indictment with (1) possession with the intent to distribute 500 grams or more of a substance containing methamphetamine, and (2) possession with the intent to distribute 500 grams or more of a substance containing cocaine, on or about November 30, 2009, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). See Filing No. 1. Magallanes seeks to suppress and exclude all information obtained as a result of a traffic stop and subsequent search of the vehicle on November 30, 2009, in Douglas County, Nebraska. See Filing No. 25.

On May 11, 2010, the court held an evidentiary hearing on the defendant's motion. Assistant United States Attorney Robert C. Sigler represented the United States. Magallanes was present with his court appointed counsel James J. Regan. Laura Garcia-Hein served as the interpreter in the Spanish language. Douglas County Sheriff's Deputy Kristopher Peterson (Deputy Peterson) testified at the hearing. The court received into evidence one audio/video disk of the traffic stop (Exhibit 1), and copies of Nebraska Revised Statutes § 60-6,142 (Exhibit 101) and § 60-6,139 (Exhibit 102) of Nebraska traffic laws. On May 15, 2010, a transcript (TR.) of the hearing was filed, whereupon the motion was deemed submitted. See Filing No. 34.

### FINDINGS OF FACT

Deputy Peterson has been with the Douglas County Sheriff's Office for a little over ten years and has been assigned to the K-9 interdiction unit for approximately five years as of May 11, 2010 (TR. 5). Deputy Peterson's duties in the K-9 interdiction unit include conducting traffic stops on the interstate system in Douglas County and enforcing local,

state and federal traffic laws (TR. 6). On November 30, 2009, at about 10:30 in the evening, Deputy Peterson was stopped in the median on Interstate 80 facing eastbound at Harrison Street (TR. 24). Deputy Peterson observed a silver or charcoal color Nissan Altima with Arizona license plates (TR. 7). Deputy Peterson observed the Nissan, traveling at the speed limit, pass him heading eastbound (TR. 26). Deputy Peterson decided to follow the Nissan because the vehicle had out-of-state license plates (TR. 25-26). Deputy Peterson followed and observed the Nissan cross over the shoulder line on two separate occasions (TR. 7).

On each occasion the Nissan traveled approximately 100 feet forward while over the shoulder line for about one second (TR. 28), and only the width of the tires crossed onto the shoulder (TR. 44). The first incident occurred at about L Street/I Street (TR. 27). The second incident occurred on a curve at the Interstate 680/I-80 junction (TR. 29-30). Deputy Peterson followed the Nissan for at least one mile before he activated his lights and camera (TR. 27, 30-31). Deputy Peterson did not observe any traffic violations from the I-680/I-80 interchange to 72nd Street where the Nissan came to a stop (TR. 32). The Nissan stopped on the 72nd Street off ramp and the deputy approached the Nissan on the passenger side (TR. 11).

There were two people in the Nissan: the driver, identified as Magallanes, and a female passenger (TR. 11). After approaching the Nissan, the deputy explained to Magallanes the stop occurred because Magallanes "drove on the shoulder a couple times" (Ex. 1 - 22:35:26). Deputy Peterson also testified he stopped the vehicle "for the traffic violation and possibly an impaired driver" (TR. 38). Deputy Peterson asked for the driver's paperwork and license (TR. 12). Magallanes told the deputy he was confused about the I-680/I-80 junction (TR. 12). Deputy Peterson mentioned to Magallanes getting confused at that specific junction "happens quite a bit." (Ex. 1 - 22:35:45).

Deputy Peterson asked Magallanes to sit in the police cruiser while the deputy completed paperwork and where the deputy asked some questions concerning Magallanes' travel plans (Ex. 1 - 22:36:22; TR. 12-13). Magallanes initially stated they, he and his wife, were traveling to Indiana, then amended his statement to say that while they were traveling to Indiana, they were also going to Philadelphia for three days to attend the funeral of someone he did not know the name of, but whom his "wife" knew (Ex. 1 -

22:37:00 - 22:41:00).  Magallanes also stated he may find work in Indiana, where he was going to stay with a cousin whose address he did not know, but would call upon arrival (*Id.*).

Magallanes remained in the cruiser while Deputy Peterson returned to the Nissan to talk to the female passenger (TR. 13).  She told Deputy Peterson they, she and her boyfriend, were traveling straight to Philadelphia to look for work (Ex. 1 - 22:41:05 - 22:43:00).  She stated she did not know how long they were going to stay in Philadelphia (*Id.*).  Deputy Peterson understood the travel itinerary information to be conflicting from the two occupants (TR. 35).  Deputy Olson arrived on the scene at Deputy Peterson's request (TR. 13).  Deputy Peterson gave Magallanes a written warning ticket for driving on the shoulder (TR. 32).

After the warning ticket was given, Magallanes agreed to allow Deputy Peterson to ask some additional questions (TR. 14).  Deputy Peterson asked whether there was drugs, money, weapons, or other contraband in the Nissan (TR. 14).  Magallanes denied having narcotics, contraband, or weapons in the Nissan (TR. 14).  Deputy Peterson asked whether there was any luggage in the Nissan and whether all of the items in the Nissan were his (TR. 33-34).  Deputy Peterson asked Magallanes, "Can I search the vehicle?," and advised Magallanes more than once that he could refuse consent (TR. 14-15).  Magallanes consented to a search of the vehicle (TR. 14).  The deputies asked the female passenger to exit the Nissan prior to conducting the search (TR. 15).  The two individuals were not handcuffed or restrained in any way during the search of the Nissan (TR. 16).  During the entire search, Magallanes never revoked his consent to search the Nissan (TR. 15).

Deputies Olson and Peterson did not find contraband or other suspicious items in the trunk (TR. 17-18).  When they turned their focus to the inside of the Nissan, the deputies lifted up the backseat and immediately smelled the odor of fresh gas (TR. 18-19).  The deputies observed fresh tool mark scratches on the sending unit that sits on top of the gas tank (TR. 19).  Deputy Olson left the Nissan to retrieve a tool bag from his cruiser in order to remove the sending unit cover (TR. 20-21).  Unbeknownst to the deputies, when Magallanes saw Deputy Olson returning to the Nissan with the tool bag, the microphone recording in the cruiser recorded Magallanes speaking in Spanish saying, "Please, Virgin,

I have sinned. Please forgive me." (TR. 23). Several minutes later, Magallanes was heard on the recording saying, "Please, Virgin, I need a miracle. Help Me." (TR. 23).

After removing the sending unit cover, the deputies smelled more gasoline and noticed fresh tooling and smudges in the dirt on top of the sending unit itself (TR. 41). The deputies removed the sending unit and lifted it up about halfway to see plastic bundles floating in the gas tank (TR. 42). The deputies did not remove the plastic bundles at that time, but, based on their experience, believed the bundles contained narcotics (TR. 42). Deputy Peterson placed Magallanes under arrest (TR. 22). A total of eleven bundles of narcotics, wrapped several times in plastic, were later removed from the gas tank (TR. 42-43).

## LEGAL ANALYSIS

### A.   Traffic Stop

Magallanes argues Deputy Peterson lacked probable cause to make the initial stop of the Nissan because Magallanes committed no traffic violation. Specifically, Magallanes contends briefly crossing the shoulder line does not constitute a violation of Nebraska Revised Statutes § 60-6,142, which provides "[n]o person shall drive on the shoulders of highways," except under certain circumstances which do not apply here.

"It is well-established that any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006) (internal quotation and citations omitted). "To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." *United States v. Mallari*, 334 F.3d 765, 766 (8th Cir. 2003). "An officer is justified in stopping a motorist when the officer 'objectively has a reasonable basis for believing that the driver has breached a traffic law.'" *Id.* at 766-67 (**quoting** *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996)).

This court is not convinced that, absent more, two brief instances of drifting for one second over the shoulder line is a traffic violation. **See** *United States v. Graumann*, 8:00CR61 (order on report and recommendation, July 20, 2000). Deputy Peterson did not observe any grounds to stop the Nissan from the time Magallanes crossed the shoulder

line at the I-680/80 junction to the time Deputy Peterson activated his lights near 84th street.

Although there is authority from the Eighth Circuit Court of Appeals concluding driving onto a highway shoulder violates section 60-6,142, this case is distinguishable on its facts. In two Eighth Circuit cases the defendants argued the officers lacked probable cause to make the traffic stop based on a violation of section 60-6,142. The officer in the most recent case, *Mallari*, observed the defendant operate a vehicle without the rear licence plate illuminated and cross over the right shoulder line three times at approximately 2:00 a.m. **See** *Mallari*, 334 F.3d at 766. In regard to driving on the shoulder, the court specifically noted that "weaving three times over the shoulder line in a short span of interstate, constitutes a violation of section 60-6,142 and probable cause to stop Mallari's vehicle." *Id.* at 767. Additionally, the officer wanted to determine the defendant's ability to drive. *Id.* at 766. In the second case, the court determined probable cause existed to initiate the traffic stop where a state trooper saw the tires of a motor home cross the shoulder line four times. *United States v. Pollington*, 98 F.3d 341, 342 (8th Cir. 1996).

Here, merely the width of the Nissan's tires crossed the shoulder line and only twice for one second. Furthermore, a fair distance of interstate separated the occurrences. This alone does not constitute a violation of section 60-6,142, or give probable cause to make a traffic stop. Also, from the time Deputy Peterson began following the Nissan he only observed Magallanes cross the shoulder line and nothing more. No additional factor existed such as the unilluminated license plate in *Mallari* that could have given Deputy Peterson an objective reason for stopping the vehicle.

Other courts interpreting related statutes have suppressed evidence obtained from traffic stops made without an objectively reasonable basis for the initial stop of the vehicles.[1] In *United States v. Freeman*, 209 F.3d 464 (6th Cir. 2000), the officer making the stop saw the defendant's vehicle cross the shoulder line for an estimated twenty to thirty feet. *Id.* at 465. The court then stated "we can not . . . agree that one isolated

---

[1] These cases interpret statutes relating to driving a vehicle as nearly as practicable entirely within a single lane, rather than a statute pertaining specifically to driving on the shoulder like the one at issue. **See** Tenn. Code Ann. § 55-8-123(1); Colo. Rev. Stat. § 42-4-1007(1)(a); Utah Code Ann. § 41-6a-710(1)(a).

incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time constitutes" a violation of Tennessee law. *Id.* at 466. Similarly, Magallanes only crossed over the shoulder line for an instant in time and a short distance of approximately 100 feet.

In ***United States v. Gregory***, 79 F.3d 973 (10th Cir. 1996), the Tenth Circuit Court of Appeals ruled on a similar case. There, the officer saw the defendant's "U-haul rental truck cross two feet into the right shoulder emergency lane" one time and decided to stop the vehicle. *Id.* at 976-77. The officer testified the conduct may have indicated a sleepy or intoxicated driver, and did not mention any further driving irregularities. *Id.* at 977. The court stated, "We do not find that an isolated incident of a vehicle crossing into the emergency lane of a roadway is a violation of Utah law." *Id.* at 978. In the present case, Deputy Peterson similarly testified that he observed only the width of the Nissan's tires cross over the shoulder line and no irregular driving while following Magallanes.

In ***Gastellum***, a vehicle was pulled over for a single instance of crossing the shoulder line by approximately two feet. *United States v. Gastellum*, 927 F. Supp. 1386, 1392 (D. Col. 1996). The incident took place on a curved section of the road and the vehicle only crossed the shoulder line for just under a second. *Id.* at 1387. Ultimately, the court suppressed the evidence obtained from the traffic stop and concluded under these circumstances, the driver did not violate Colorado law. *Id.* at 1393. Likewise, Magallanes crossed, for about one second, over the shoulder line on a curved section of the road.

Nebraska Revised Statutes § 60-602 declares the legislative purpose of the Nebraska Rules of the Road. The first purpose listed is "[t]o make more uniform highway traffic laws between states." Neb. Rev. Stat. § 60-602(1). With this in mind, the court is of the view that the Nebraska legislature enacted section 60-6,142 to prohibit drivers from "driving" on the shoulder, that is, using the shoulder as a thoroughfare or for primary travel. The Nebraska Supreme Court has not commented on the purpose of section 60-6,142, but there is Nebraska case law to support this notion.[2] Under these circumstances, it is fair to

---

[2] **See** *Graumann*, 8:00CR61 (Order quoting *Nebraska v. Latham*, No. CR 98-57, Buffalo County, Neb. Sept. 10, 1998 (concluding purpose of statute is not to criminalize briefly crossing over the shoulder line)). **But see** *Nebraska v. Davis*, No. A-07-104, 2007 WL 2257886, at *1 (Neb. App. Aug. 7, 2007) (concluding briefly crossing the shoulder line is a violation of Nebraska law).

understand the purpose of the law is not to criminalize a driver for momentarily crossing the shoulder line for one second.

Deputy Peterson did testify he pulled the vehicle over because it had crossed the shoulder line and he thought the driver, Magallanes, could possibly have been impaired. During the traffic stop Magallanes explained his confusion to Deputy Peterson about which freeway to follow at the I-680/I-80 junction.  Deputy Peterson mentioned to Magallanes the I-680/I-80 junction causes frequent confusion for drivers.  Based on Deputy Peterson's prior knowledge, it is reasonable to think Deputy Peterson would infer a confused driver crossed the shoulder line, not an impaired driver.  The court finds Deputy Peterson had no objectively reasonable belief that the Nissan's driver was impaired.

Nevertheless, Deputy Peterson continued to follow Magallanes for a distance after Magallanes crossed the shoulder line at the junction and at no point did he have an objectively reasonable basis for making the traffic stop.  **See *United States v. Lyons*, 7 F.3d 973, 976 (10th Cir. 1993)** ("[I]f failure to follow a perfect vector down the highway or keeping one's eyes on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy."), *overruled on other grounds by **United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995)**.  The Nebraska Supreme Court observed, "it is a matter of common knowledge that careful drivers not only may on occasion, but frequently must, use the shoulders to some extent as a part of the highway . . . ."  ***Richardson v. Nebraska*, 263 N.W.2d 442, 446 (Neb. 1978)**.  The court concludes that, without more, Magallanes' conduct of crossing the shoulder line on two separate occasions where only the width of the tire entered the shoulder for one second does not create probable cause to make a traffic stop pursuant to section 60-6,142.  The court finds Deputy Peterson had no objectively reasonable belief that the Nissan's driver had violated a traffic law.

The exclusive rule prohibits the admission of evidence unconstitutionally obtained.  ***Weeks v. United States*, 232 U.S. 383 (1914)**.  This applies to tangible and testimonial evidence derived directly or indirectly from the unconstitutionally obtained evidence, i.e., the "fruit of the poisonous tree."  ***Wong Sun v. United States*, 371 U.S. 471 (1963)**; ***Nardone v. United States*, 308 U.S. 338 (1939)**; ***Silverthorne Lumber Co. v.***

*United States*, 251 U.S. 385 (1920). Because the court determined the Nissan was stopped without legal justification, the evidence stemming from the stop should be suppressed. All evidence and statements requested to be suppressed as the fruit of an illegal stop should be suppressed pursuant to **Wong Sun**. Accordingly, the court determines the defendant's motion to suppress should be granted and any evidence derived from the stop of the Nissan should be suppressed.

### B.

Despite such determination, the court will address, arguendo, the issues of unreasonable detention and exceeding the scope of search raised by Magallanes.

### 1.   Detention

Magallanes argues Deputy Peterson unreasonably prolonged the detention for the traffic stop in violation of the Fourth Amendment. **See** Filing No. 26 - Brief, p. 1. "[T]he officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (**quoting** *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam)). The Eighth Circuit Court of Appeals has set a reasonable procedure for law enforcement officers with respect to reasonable detention:

> During a traffic stop, an officer may detain the occupants of the vehicle while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation. The tasks include asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose. An officer may ask passengers these questions. If complications arise during these routine tasks, the vehicle may reasonably be detained for a longer duration than when a stop is strictly routine. Whether a traffic stop is reasonable in length is a fact intensive question, and there is no per se time limit on all traffic stops.

*United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008) (internal quotations and citations omitted).

Deputy Peterson followed the correct procedure laid out by the Eighth Circuit. The length of the traffic stop was directly related to the performance of routine tasks. Deputy Peterson asked for Magallanes' license and other paperwork, explained the purpose of the stop, separated the two occupants and asked them about their destination of travel, itinerary, and purpose for travel without any unreasonable delay. The traffic stop concluded with issuance of the warning ticket.

"If the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions." *United States v. Ward*, 484 F.3d 1059, 1062 (8th Cir. 2007) (internal quotation omitted). Deputy Peterson received conflicting travel itinerary from the two occupants. Although Deputy Peterson could have broadened his inquiry to satisfy suspicions arising from the conflicting travel itinerary without consent, he inquired of Magallanes whether he would answer more questions. Magallanes consented to Deputy Peterson's request, and at that point Deputy Peterson began asking questions in regard to drugs, money, and weapons being in the Nissan. Magallanes' consent to answer additional questions was a consent to an additional period of detention. At that time, the conversation was during a consensual encounter. Accordingly, Deputy Peterson did not violate Magallanes' constitutional rights of unreasonable detention when issuing the warning ticket.

### 2. Search

Magallanes was asked and gave consent to search the Nissan. Magallanes argues his Fourth Amendment rights were violated when Deputy Peterson exceeded the scope of Magallanes' consent to search the vehicle. **See** Filing No. 26 - Brief, p. 2. The Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV*; **see** *United States v. Ameling*, 328 F.3d 443, 447 (8th Cir. 2003) (Fourth Amendment applies to the states through the Fourteenth Amendment.). "A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion." *United States v. Meza-Gonzalez*, 394 F.3d 587, 592 (8th Cir. 2005). "In order for a consensual

search to be valid, consent must actually be given (either express or implied), and the person giving consent must have (actual or apparent) authority to do so." *United States v. Williams*, 521 F.3d 902, 906 (8th Cir. 2008). A party may withdraw consent to search only by "an unequivocal act or statement to indicate withdrawal of the consent." *United States v. McMullin*, 576 F.3d 810, 815 (8th Cir. 2009). "The standard for measuring the scope of a [person's] consent under the Fourth Amendment is that of 'objective' reasonableness–what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* (**citing** *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). "In assessing the scope of consent, we must examine the totality of the circumstances, including the language of [a person's] consent and his actions while the officers were conducting their search." *United States v. Starr*, 533 F.3d 985, 996 (8th Cir. 2008).

In examining the totality of the circumstances, it is clear Magallanes unequivocally and voluntarily gave consent to Deputy Peterson to search the vehicle. Deputy Peterson asked Magallanes for permission to search the vehicle. Magallanes consented to a search of the vehicle. Deputy Peterson advised Magallanes more than once he was under no obligation to consent to the search. Although Deputy Peterson's line of questioning prior to asking for consent dealt primarily with luggage in the trunk and belongings in the vehicle, the consent given was to search ***the vehicle*** and was not specifically limited to a search of the trunk or the luggage. Magallanes' consent is reasonably interpreted to include searching any part of the vehicle.

Magallanes did not withdraw consent at any time during the search. The court notes Magallanes' inaction during the search indicated he did not try to revoke or limit the scope of the search. Rather than telling Deputy Peterson to stop the search when he saw Deputy Olson carry a tool bag toward the Nissan, Magallanes remained where he was and prayed to the Virgin for forgiveness and a miracle. Accordingly, Deputy Peterson did not exceed the scope of the search beyond the consent given by Magallanes when he lifted up the backseat and dismantled the sending unit.

## CONCLUSION

The court concludes Deputy Peterson lacked probable cause to make the initial stop of the vehicle solely on the above mentioned incidents of crossing the shoulder line. Therefore, the motion to suppress evidence obtained based on the traffic stop on November 30, 2009, should be granted. Nevertheless, the court determines no further violation of Magallanes' constitutional rights occurred during the detention from the traffic stop or during the subsequent search of the vehicle.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Alberto Magallanes' Motion to Suppress (Filing No. 25) be granted.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to these Findings and Recommendations shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of these Findings and Recommendations. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 15th day of June, 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.